Emily T. Howe (18294)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone: (801) 799-5800
ethowe@hollandhart.com

Timothy P. Getzoff (*pro hac vice* application forthcoming)
Ellen K. Levish (*pro hac vice* application forthcoming)
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
Telephone: (303) 473-2700
tgetzoff@hollandhart.com
eklevish@hollandhart.com

*Attorneys for Plaintiff Pit Viper, LLC*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PIT VIPER, LLC; | **COMPLAINT AND JURY DEMAND** |
| Plaintiff, | |
| v. | |
| ROADGET BUSINESS PTE. LTD.; SHEIN US SERVICES, LLC,; SHEIN DISTRIBUTION CORPORATION; and ZOETOP BUSINESS CO., LIMITED; | Case No. 2:24-cv-00839 |
| Defendants. | Judge _____ |

Pit Viper, LLC brings the present action against Roadget Business Pte. Ltd., SHEIN US

Services, LLC, SHEIN Distribution Corporation, and Zoetop Business Co., Limited (collectively,

"Defendants") and alleges as follows:

**INTRODUCTION**

1.      Defendants are blatant infringers and counterfeiters who are manufacturing, selling, promoting for sale, and distributing sunglasses that make unauthorized use of Pit Viper's intellectual property. Defendant's unauthorized products are collectively referred to herein as their "Infringing Sunglasses."

2.      Defendants, acting in concert with one another, advertise and sell the Infringing Sunglasses through their ecommerce website found at us.shein.com and through their mobile shopping app.

3.      Pit Viper has been and continues to be irreparably damaged as a result of Defendants' actions, including because Defendants' actions cause consumer confusion and erode the valuable goodwill Pit Viper has built in its brand.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over the claims in this action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331.

5.      This Court has jurisdiction over the claims in this action that arise under the laws of the State of Utah pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting business in interstate commerce in the United States. Defendants directly target their business activities toward consumers in Utah and the United

Sates and cause harm to Pit Viper's business within this Judicial District. Defendants have targeted sales to Utah residents by operating a fully interactive and commercial website at us.shein.com that offers to sell and has actually sold the Infringing Sunglasses to residents of Utah.

### THE PARTIES

#### PLAINTIFF PIT VIPER

7.      Pit Viper, LLC is a limited liability company organized and existing under the laws of the State of Utah. Pit Viper's principal place of business is located at 159 West Haven Avenue, Salt Lake City, Utah 84115.

8.      Since as early as 2012, Pit Viper has designed and sold sunglasses with a distinctive style and flare that sets it apart from the rest of the sunglasses market. Pit Viper has been building valuable goodwill in the marketplace for more than a decade; nowadays, it is an internationally recognized manufacturer, distributor, and retailer of sunglasses, sports goggles, apparel, accessories, and other merchandise. The sunglasses at issue in this case feature Plaintiff's PIT VIPER word mark, which is emblazoned on the front of the lenses in its bold and attention-grabbing "fang" stylization (whether stylized or in standard character, the "PIT VIPER Trademarks").





9.      In recognition of Pit Viper's long-standing and substantially exclusive use of its uniquely designed sunglasses, the United States Patent and Trademark Office (the "USPTO") granted two federal registrations for its distinctive trade dress which is comprised of a horizontal bar placed at the top mid-point of the front of spectacle lenses (the "Brow Bar Trade Dress"). The Brow Bar Trade Dress may be featured by itself, or with a small pair of protruding tabs featured at the front corners of the spectacle lenses (together the "Pit Viper Trade Dress").



10.      Many of Pit Viper's sunglasses, including many at issue in this case, also feature Pit Viper's unique "splatter paint" designs – several of which Pit Viper has registered with the U.S. Copyright Office (the "Pit Viper Copyrights").



11.     Pit Viper sunglasses featuring the PIT VIPER Trademarks, the Pit Viper Trade Dress, and the Pit Viper Copyrights are carefully and intentionally designed and marketed to be unapologetically loud, brash, comically irreverent, and have become extremely popular—even iconic—fashion statements. Among the purchasing public in the United States and around the world, genuine PIT VIPER sunglasses are recognizable as PIT VIPER sunglasses.

12.     Attached as **Exhibit A** are copies of third-party media coverage of and references to Pit Viper sunglasses and its unique brand.

13.     Pit Viper Products are distributed and sold to consumers through retailers throughout the United States. Pit Viper Products are distributed and sold to consumers through channels including authorized retailers in Utah and the official www.pitviper.com website.

14.     Pit Viper owns various intellectual property relating to the design of its various Pit Viper sunglasses. Pit Viper owns common law trademark rights in its PIT VIPER Trademarks, and has registered and applied for registration of its PIT VIPER Trademarks for a variety of goods and services. Pit Viper sunglasses typically include at least one version of the PIT VIPER Trademarks. Pit Viper has also registered the Pit Viper Trade Dress with the USPTO and the Pit Viper Copyrights with the U.S. Copyright Office. Defendants' products at issue in this case feature identical copies of the PIT VIPER Trademarks and the Pit Viper Trade Dress, with numerous

examples also incorporating copies of or derivative works of the Pit Viper Copyrights. The following are collectively referred to as the Pit Viper IP:

| Registration / Application Numbers | IP |
|---|---|
| Trademark<br>U.S. Reg. No. 6363262<br>International Classes: 14, 16, 18, 21, 24, 25, 26, 28 | PIT VIPER |
| Trademark<br>U.S. Reg. No. 6363259<br>International Classes: 14, 16, 18,21, 24, 25, 26, 28 |  |
| Trademark<br>U.S. Ser No. 97384266*<br>International Classes: 9 | PIT VIPER |
| Trademark<br>U.S. Ser No. 97113479<br>International Classes: 35 | PIT VIPER |
| Trademark<br>U.S. Reg. No. 97384512<br>International Classes: 9 |  |
| Trademark<br>U.S. Ser No. 97384540*<br>International Classes: 35 |  |
| Trade Dress<br>U.S. Reg. No. 6903760<br>International Class: 9 | <br>Mark Depicted in Solid Lines |

| Registration / Application Numbers | IP |
|---|---|
| Trade Dress<br>U.S. Reg. No. 6903761<br>International Class: 9 | <br>Mark Depicted in Solid Lines |
| Registered Copyright<br>U.S. Reg. No. VA 2-392-545 |  |
| Registered Copyright<br>U.S. Reg. No. VA 2-391-528 |  |
| Registered Copyright<br>U.S. Reg. No. VA 2-391-538 |  |

15.     The above registrations and applications for the Pit Viper IP are valid, subsisting, and in full force and effect. Attached as **Exhibit B** are true and correct copies of the registration certificates and application records for the Pit Viper IP.

16.    The PIT VIPER Trademarks and the Pit Viper Trade Dress have been used exclusively and continuously by Pit Viper for many years and have never been abandoned. Pit Viper's registrations for the PIT VIPER Trademarks and Pit Viper Trade Dress provide prima facie evidence of their validity, of Pit Viper's ownership thereof, and of Pit Viper's exclusive right to use them in interstate commerce in connection with the goods and services described therein. 15 U.S.C. § 1115(a).

17.    The PIT VIPER Trademarks and Pit Viper Trade Dress are exclusive to Pit Viper and are incorporated and displayed extensively on Pit Viper's sunglasses and in Pit Viper's marketing and promotional materials. Pit Viper has invested millions of dollars annually in advertising, promoting, and marketing of its sunglasses featuring the PIT VIPER Trademarks and the Pit Viper Trade Dress.

18.    Pit Viper sunglasses have also been the subject of extensive unsolicited publicity resulting from their high-quality, unique design, and aggressive style.

19.    Pit Viper frequently collaborates with famous professional athletes, celebrities, and influencers whose larger-than-life personas tie in with the brand's distinctive image.

20.    Because of these and other factors, the PIT VIPER Trademarks and the Pit Viper Trade Dress have become famous throughout the United States.

21.    The PIT VIPER Trademarks and the Pit Viper Trade Dress are distinctive when applied to sunglasses signifying to the purchaser that the products come from Pit Viper and are manufactured to Pit Viper's quality standards. The PIT VIPER Trademarks and the Pit Viper Trade Dress have achieved tremendous fame and recognition in the United States. As such, the goodwill

associated with the PIT VIPER Trademark and the Pit Viper Trade Dress is of incalculable value to Pit Viper.

22.     The Pit Viper Copyrights consist of original creative artwork which is separately identifiable and capable of existing independently of the Pit Viper sunglasses to which they are applied.

23.     Since at least as early as October 2012, Pit Viper has operated a website where it promotes and sells genuine Pit Viper sunglasses at www.pitviper.com (the "Pit Viper Website"). Sales of Pit Viper sunglasses via the Pit Viper Website represent a significant portion of Pit Viper's business. The Pit Viper website features proprietary content, images, and designs exclusive to Pit Viper.

24.     Pit Viper's unmistakable brand identity has enabled Pit Viper to achieve a high-level of consumer recognition, loyalty, and fame—resulting in Pit Viper customers proudly submitting pictures and videos of themselves and others wearing Pit Viper sunglasses, often in comical and extreme situations. Pit Viper has featured numerous such photos under license from its customers on its social media accounts to celebrate their love of Pit Viper sunglasses and the attitude they represent.

25.     Pit Viper has expended extensive resources, time, money, and effort in developing, advertising and otherwise promoting the Pit Viper brand and the Pit Viper IP. As a result, products bearing the Pit Viper IP are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Pit Viper. Pit Viper is a multi-million-dollar operation, and Pit Viper sunglasses have become among the most popular of their kind in the United States.

**DEFENDANTS: SHEIN**

26.     On information and belief, all Defendants are commonly owned and managed and are engaging in a joint venture enterprise and/or conspiracy to commit the unlawful acts described and claimed herein.

27.     On information and belief, Defendant Roadget Business Pte. Ltd. ("Roadget") is a private company limited by shares organized and existing under the laws of the Republic of Singapore, with a registered office and principal place of business located at 7 Temasek Boulevard #12 07 Suntec Tower One Suntec, 038987 Singapore.

28.     On information and belief, Roadget is the parent company of the other named Defendants, as well as the greater SHEIN Group of enterprises operating SHEIN ecommerce sites in the United States and around the world. On information and belief, Roadget operates from a principal business address of 12 Marina Boulevard, #15-01, Marina Bay Financial Centre, Singapore 018982.

29.     The website terms and conditions found at www.sheingroup.com states:

> Welcome to SHEIN's enterprise information pages www.sheingroup.com (the "Site"). These Terms & Conditions ("Agreement" or "Terms") constitute a contract between you and Roadget Business Pte. Ltd., as the operator of the Site (as defined below) (where applicable, "SHEIN," "Company," "we," "us," and "our" shall refer to Roadget Business Pte. Ltd. and "you" or "your" shall refer to the user of the Site and the services incorporated on our Site (the "Services").

30.     On information and belief, Roadget is the owner of the SHEIN mobile shopping apps that can be found at the Google Play Store and the Apple App Store (the "SHEIN Mobile Shopping App")

31.     On information and belief, Defendant SHEIN US Services, LLC ("SHEIN US") is a limited liability company organized and existing under the laws of the state of Delaware, with a business address of 777 South Alameda Street, 2nd Floor, Los Angeles, California 90021-1672.

32.     On information and belief, SHEIN US is the operator of the SHEIN ecommerce website located at www.us.shein.com (the "SHEIN Website") which states:

> The Site and the App are provided by SHEIN US Services, LLC. Where applicable, "SHEIN," the "Company," "we," "us" and "our" shall refer to SHEIN US Services, LLC and its affiliates and "you" or "your" shall refer to the user of the Services.

33.     On information and belief, Defendant SHEIN Distribution Corporation ("SHEIN Distribution") is a corporation incorporated and existing under the laws of the state of Delaware, with a principal place of business of 57 South Alameda Street, Suite 220, Los Angeles, California 90021. On information and belief, Shein Distribution Corporation is the U.S. distributor for products offered for sale on the SHEIN Website.

34.     The Supply Chain Transparency Statement displayed on the SHEIN Website pursuant to California Civil Code Section 1714.43 states that "SHEIN Distribution Corporation is a member of the SHEIN group of companies and a subsidiary of Roadget Business Pte. Ltd. (collectively, 'SHEIN')."

35.     On information and belief, Defendant Zoetop Business Co., Limited ("Zoetop") is a Private Limited Company organized and existing under the laws of Hong Kong Special Administrative Region, with a registered office and principal place of business located at Room 11-12, 2/F, Hong Leong Plaza (Phase 1), No. 33 Lok Yip Road, Fanling, Hong Kong.

36.     On information and belief, Zoetop was the owner and/or operator of the SHEIN Website during a portion of the infringing unlawful conduct discussed further below.

11

37.     The terms of use found on the SHEIN Website – operated by SHEIN US – lists

email addresses for legal contact at us_legal@sheingroup.com and also states:

> The trademark SHEIN and other trademarks, service names, logos,
> designs, phrases, page headers, button icons, and scripts used by
> SHEIN in connection with the Services, are trademarks, service
> marks, and trade dress of SHEIN (collectively, the 'Marks") in the
> United States and other countries.

38.     In October 2021, the U.S. trademark records for the SHEIN trademark (among

others) was assigned by Defendant Zoetop Business Co., Limited to Defendant Roadget Business

Pte. Ltd.

39.     Attached as **Exhibit C** are true and correct copies of the SHEIN Website pages

displaying the above described association between the Defendants.

40.     Throughout the SHEIN Website, along with other SHEIN websites, the Defendants

are legally defined as and universally referred to simply as SHEIN.

41.     Collectively, Defendants conduct business throughout the United States, including

within Utah and this Judicial District, through the operation of at least the fully interactive SHEIN

Website and the SHEIN Mobile Shopping App and by distributing the Infringing Sunglasses into

Utah.

42.     Defendants target the United States, including Utah residents, and have offered to

sell, and have sold, Infringing Sunglasses to consumers within the State of Utah through their

website at us.shein.com.

43.     SHEIN is a known and repeat infringer and counterfeiter of famous third-party

trademarks. Attached as **Exhibit D** are media articles describing lawsuits against SHEIN for

intellectual property infringement and counterfeiting. An August 23, 2024 article on Forbes.com noted:

> Other fashion brands or retailers have accused Shein of copyright infringement. H&M sued Shein last July, alleging Shein stole the company's intellectual property and sold counterfeit products. Dr. Martens, Ralph Lauren, Levi Strauss, Puma and Adidas have filed similar complaints. Those suits are ongoing.

44.    A February 1, 2024 article from the Financial Times quoted U.S. Senator Rick Scott of Florida as saying:

> Shein's lack of transparency, seemingly illegal business practices and allegations of unethical conduct, like IP theft, may be OK in Communist China but won't fly in the United States. Shein is bad news from any angle you look at it.

45.    That same article from the Financial Times noted that 93 different designers and companies "have filed lawsuits in US federal courts against Shein for alleged copyright or trademark infringement since 2018."

## **DEFENDANTS' UNLAWFUL CONDUCT**

46.    The SHEIN Website and the SHEIN Mobile Shopping App are fully interactive, commercial ecommerce platforms used by SHEIN to sell counterfeit versions of Pit Viper sunglasses.

47.    Defendants are engaged in designing, manufacturing, advertising, promoting, distributing, selling, and/or offering for sale sunglasses on the SHEIN Website and the SHEIN Mobile Shopping App bearing at least one element of the Pit Viper IP, with numerous examples that are studied counterfeits of Pit Viper sunglasses.

48.    Prior to the filing of this Complaint, examples of the Infringing Sunglasses were purchased from the SHEIN Website.

49. The purchased Infringing Sunglasses were offered for sale to and shipped by Defendants to United States consumers, including in the State of Utah.

50. Upon inspection, the purchased Infringing Sunglasses were revealed to be of inferior quality as compared to authentic Pit Viper sunglasses.

51. A comparison of the Pit Viper IP to Defendants' Infringing Sunglasses sold and shipped by SHEIN lays bare SHEIN's counterfeiting and infringement of the Pit Viper IP.

| Pit Viper IP | Authentic Pit Viper Sunglasses | SHEIN'S Infringing Sunglasses |
|---|---|---|
| Trademarks<br><br>PIT VIPER<br><br>PIT VIPER<br><br>Trade Dress<br><br> |  |  |

| Copyrights | | |
| --- | --- | --- |





52.    On information and belief, SHEIN is and has been since commencing its unlawful activities relating to Pit Viper sunglasses, fully aware of the Pit Viper IP.

53.    SHEIN has gone to great lengths to slavishly copy and/or mimic the PIT VIPER Trademark and stylization, the Pit Viper Trade Dress, and the Pit Viper Copyrights – including combining all three to create undisputable counterfeits.

54.    SHEIN uses the PIT VIPER Trademarks in the title and imagery of its ecommerce listings:




55.     Not only is SHEIN marketing, offering for sale, and selling Infringing Sunglasses that infringe Pit Viper's trademarks, trade dress, and copyrights, SHEIN also made unauthorized copies of one of Pit Viper's copyrighted advertising videos and posted the video on SHEIN's website to promote the Infringing Sunglasses. Specifically, SHEIN copied an advertising video from Pit Viper's social media pages, protected by U.S. Copyright Reg. No. Pau 4-240-118 (together with the Pit Viper Copyrights, the "Pit Viper Works"), and reposted the same video verbatim on its website selling the Infringing Sunglasses, to further SHEIN's scheme to intentionally confuse and mislead the public into believing that the Infringing Sunglasses are authentic and/or sourced from Pit Viper.

17



56.     On information and belief, SHEIN is directly responsible, from start to finish, for the promotion, sale, manufacturing, export, import, and delivery of the Infringing Sunglasses.

57.     After the order was placed for the Infringing Sunglasses (per paragraph 48), an order confirmation was received from SHEIN from noreply@sheinemail.com.

58.     Both the payment processing and a partial refund for the purchase of the Infringing Sunglasses were processed by "SHEIN.COM Kent DE 19934 USA."

59.     The purchased Infringing Sunglasses were shipped in packaging that indicates they were manufactured in China by TAIZHOU JUELIANG GLASSES CO., LTD. The packaging for the purchased sunglasses also confirms that the Infringing Sunglasses were "Manufactured for SHEIN."

18



60.    Defendants, without any authorization, license, or other permission from Pit Viper, have used the PIT VIPER Trademarks, the Pit Viper Trade Dress, and the Pit Viper Copyrights in connection with the advertisement, distribution, offering for sale, and sale of the Infringing Sunglasses into the United States and Utah over the Internet.

61.    SHEIN regularly promotes and amplifies the Infringing Sunglasses as best sellers e.g., "#1 Best Seller in Women's Sports Glasses," "#2 Best Seller in Men's Sports Glasses," "#1 Best Seller in Cycling Glasses" and boasts that hundreds and even thousands of pairs have recently been purchased from each of the many listings on the SHEIN Website.

62.    SHEIN sells the Infringing Sunglasses for under $5.00, while a pair of genuine Pit Viper Sunglasses typically sell for over $100.

63.     After discovery of the Infringing Sunglasses on the SHEIN Website, Pit Viper's undersigned counsel sent a cease & desist letter on August 7, 2024 to SHEIN's U.S. counsel of record at the USPTO for registered SHEIN trademarks, Ms. Susan L. Heller of the law firm Greenberg Traurig, LLP. SHEIN's counsel confirmed receipt of the letter that same day and confirmed she had forwarded the letter to in-house counsel for SHEIN.

64.     As of the filing of this Complaint, no counsel for SHEIN has ever responded to Pit Viper's letter.

65.     As of the filing of this Complaint, the Infringing Sunglasses are still marketed for sale on the SHEIN Website and the SHEIN Mobile Shopping App. **Exhibit E.**

66.     Defendants' use of infringements and/or counterfeits of the Pit Viper Trademarks in the advertisement, manufacture, distribution, offering for sale, and sale of the Infringing Sunglasses was willful.

67.     Defendants' willful use of infringements and/or counterfeits of the Pit Viper Trademarks in connection with the advertisement, manufacture, distribution, offering for sale, and sale of the Infringing Sunglasses, including the sale of Infringing Sunglasses into Utah, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Pit Viper.

## COUNT I
## TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

68.     Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

69.    This is a trademark infringement action against Defendants based on their unauthorized use in commerce of infringing versions of the common law and federally registered Pit Viper Trademarks and Pit Viper Trade Dress in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The PIT VIPER Trademarks are strong and highly distinctive marks. Consumers have come to expect the highest quality from Pit Viper sunglasses sold or marketed under the Pit Viper Trademarks and Pit Viper Trade Dress.

70.    Defendants have sold, offered to sell, marketed, manufactured, distributed and advertised products bearing infringements of the Pit Viper Trademarks and Pit Viper Trade Dress without Pit Viper's permission.

71.    Pit Viper is the exclusive owner of the Pit Viper Trademarks and Pit Viper Trade Dress. Pit Viper's United States registrations and United States applications for the Pit Viper Trademarks and Pit Viper Trade Dress (**Exhibit B**) are in full force and effect. On information and belief, Defendants have knowledge of Pit Viper's rights in the Pit Viper Trademarks and Pit Viper Trade Dress and are willfully infringing and intentionally using infringing versions of the Pit Viper Trademarks and Pit Viper Trade Dress. Defendants' willful, intentional, and unauthorized use of the Pit Viper Trademarks and Pit Viper Trade Dress is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Sunglasses among the general public.

72.    Defendants' activities constitute willful trademark and trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

73.     Pit Viper has no adequate remedy at law, and if Defendants' actions are not

enjoined, Pit Viper will continue to suffer irreparable harm to its reputation and the goodwill of its

well-known Pit Viper Trademarks and Pit Viper Trade Dress.

74.     The injuries and damages sustained by Pit Viper have been directly and proximately

caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and

sale of Infringing Sunglasses.

**COUNT II**
**TRADEMARK COUNTERFEITING**
**U.S. REG. NOS. 6,903,760, 2,698,855, AND 6,903,761**
**(15 U.S.C. § 1114)**

75.     Pit Viper hereby re-alleges and incorporates by reference the allegations set forth

in the preceding paragraphs.

76.     Pit Viper also brings this action against Defendants based on their unauthorized use

in commerce of counterfeit imitations of Pit Viper's federally registered trade dress (the

"Counterfeited Pit Viper Trade Dress") in connection with the sale, offering for sale, manufacture,

distribution, and/or advertising of counterfeit goods. The Counterfeited Pit Viper Trade Dress are

highly distinctive marks. Consumers have come to expect the highest quality from Pit Viper

sunglasses sold or marketed under the Counterfeited Pit Viper Trade Dress.

77.     Defendants have sold, offered to sell, marketed, manufactured, distributed and

advertised products featuring the Counterfeited Pit Viper Trade Dress without Pit Viper's

permission.

78.     Pit Viper is the exclusive owner of the Counterfeited Pit Viper Trade Dress. Pit

Viper's United States Registrations for the Counterfeited Pit Viper Trade Dress are in full force

and effect. On information and belief, Defendants have knowledge of Pit Viper's rights in the

Counterfeited Pit Viper Trade Dress and are willfully infringing and intentionally using counterfeits of the Counterfeited Pit Viper Trade Dress. Defendants' willful, intentional, and unauthorized use of the Counterfeited Pit Viper Trade Dress is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Sunglasses among the general public.

79.     Defendants' activities constitute willful trademark counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

80.     Pit Viper has no adequate remedy at law, and if Defendants' actions are not enjoined, Pit Viper will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Counterfeited Pit Viper Trade Dress.

81.     The injuries and damages sustained by Pit Viper have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of the Infringing Sunglasses.

## <u>COUNT III</u>
## FALSE DESIGNATION OF ORIGIN
## U.S.C.§ 1125(A))

82.     Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

83.     Defendants' promotion, marketing, offering for sale, and sale of the Infringing Sunglasses has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Pit Viper or the origin, sponsorship, or approval of Defendants' Infringing Sunglasses by Pit Viper.

84.    By using the PIT VIPER Trademarks on the Infringing Sunglasses, Defendants created a false designation of origin as to the origin and sponsorship of the Infringing Sunglasses.

85.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Infringing Sunglasses to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

86.    Pit Viper has no adequate remedy at law and, if Defendants' actions are not enjoined, Pit Viper will continue to suffer irreparable harm to its reputation and the goodwill of the Pit Viper brand.

**COUNT IV**
**COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 501)**

87.    Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

88.    At all times relevant hereto, Pit Viper has been the owner of the Pit Viper Works described herein, including but not limited to Pit Viper's registered splatter patterns and promotional video.

89.    Pit Viper has applied for and received registrations from the United States Copyright Office for the Pit Viper Works, registration numbers VA 2-391-528, VA 2-391-528, VA 2-391-538, and Pau 4-240-118.

90.    Without authorization, Defendants have used, reproduced, made derivative copies, and/or publicly displayed the Pit Viper Works.

91.    Pit Viper did not authorize Defendants' use, reproduction, and/or public display of the Pit Viper Works at issue.

92.    Defendants infringed the copyrights in the Pit Viper Works by using, reproducing, and/or publicly displaying the Works at issue without approval or authorization of Plaintiff.

93.    In addition, Defendants have encouraged, instructed, and/or aided and abetted others in the infringement of the Pit Viper Works, resulting in indirect, contributory, induced, and/or vicarious copyright infringement

94.    Defendants knew the infringed Pit Viper Works belonged to Plaintiff and that they did not have permission to exploit the Pit Viper Works.

95.    Defendants knew their acts constituted both direct and indirect copyright infringement.

96.    Defendants' conduct was willful within the meaning of the Copyright Act.

97.    As a result of their wrongful conduct, Defendants are liable to Pit Viper for copyright infringement pursuant to 17 U.S.C. § 501. Pit Viper has suffered, and will continue to suffer substantial losses, including but not limited to damage to its business.

98.    Pit Viper is entitled to recover all statutory and actual damages to which Pit Viper is entitled, which includes its losses and any and all profits Defendants have made as a result of its wrongful conduct.

99.    Pit Viper is entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

<u>**COUNT V**</u>
**VIOLATION OF UTAH UNFAIR COMPETITION ACT**
**(U.C.A. § 13-5A-103, ET SEQ.)**

100.    Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

101.    Defendants have engaged in acts violating Utah unfair competition law including, but not limited to, passing off their Infringing Sunglasses as those of Pit Viper, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Pit Viper sunglasses, representing that their Infringing Sunglasses have Pit Viper's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

102.    Pit Viper has no adequate remedy at law, and Defendants' conduct has caused Pit Viper to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, Pit Viper will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT VI**
**VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT**
**(U.C.A. § 13-11-19, ET SEQ.)**

103.    Pit Viper hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

104.    Defendants have engaged in acts violating Utah law protecting consumers from deceptive and unconscionable sales practices including, but not limited to, passing off their Infringing Sunglasses as those of Pit Viper, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Pit Viper sunglasses, representing that their Infringing Sunglasses have Pit Viper's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

105.    Pit Viper has no adequate remedy at law, and Defendants' conduct has caused Pit Viper to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, Pit Viper will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Pit Viper prays for judgment against Defendants as follows:

A.    That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   i.    Using the PIT VIPER Trademarks, the Pit Viper Trade Dress, the Pit Viper Copyrights, or the Pit Viper Works or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Pit Viper Product or is not authorized by Pit Viper;

   ii.    Passing off, inducing, or enabling others to sell or pass off any product as genuine Pit Viper sunglasses or any other product produced by Pit Viper, that is not Pit Viper's or not produced under the authorization, control, or supervision of Pit Viper and approved for sale by Pit Viper;

   iii.    Committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Pit Viper, or are sponsored by, approved by, or otherwise connected with Pit Viper;

iv.       Further infringing the Pit Viper IP and damaging Pit Viper's goodwill;

v.       Manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Pit Viper, nor authorized by Pit Viper to be sold or offered for sale, and which bear any of the Pit Viper IP.

vi.       Aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Pit Viper IP; and

vii.       Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vii) above;

B.       That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Pit Viper a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph A, i through vii, *supra*;

C.       That Pit Viper be compensated for the actual damages it has incurred as a result of Defendants' infringing conduct;

D.       That Defendants account for and pay to Pit Viper all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Pit Viper IP be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117 and 17 U.S.C. § 504-505;

E.    That Pit Viper be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every sale of counterfeit versions of Pit Viper sunglasses;

F.    That Pit Viper be awarded its reasonable attorneys' fees and costs; and

G.    Award any and all other relief that this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38, Pit Viper hereby demands a trial by jury as to all issues so triable.

DATED this 8th day of November 2024.

HOLLAND & HART LLP


*/s/ Emily T. Howe*
Timothy P. Getzoff
Ellen K. Levish
Emily T. Howe

*Attorneys for Plaintiff Pit Viper, LLC*

**Plaintiff's Address:**

**c/o Holland a& Hart LLP**
**222 South Main St., Suite 2200**
**Salt Lake City, UT, 84101**

33263367_v4